# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. GRECO, | : | |
| Plaintiff | : | |
| v. | : | The Honorable Malachy E. Mannion |
| MICHAEL SENCHAK, et.al. | : | |
| Defendants | : | No.: 3:12-cv-02576-MEM |

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANTS NORTHEAST REVENUE SERVICES, INC.,
## JOHN RODGERS AND SEAN SHAMANY'S
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

### I. COUNTERSTATEMENT OF PROCEDURAL HISTORY/FACTS

On August 26, 2013, this Honorable Court granted in part and denied in part Moving Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 66 at pp. 1-2.). Specifically, this Court limited Plaintiff's negligence claims as against Northeast Revenue to "those claims arising out of the publication of information about Plaintiff's financial status and the mistaken tax sale notices", denied Moving Defendants' Motion to Dismiss Plaintiff's tortious malfeasance/misfeasance Count III, but limited same to be construed as a negligence claim [Doc. No. 65, p. 16], denied Rodgers/Shamany's Motion for Qualified Immunity and dismissed Plaintiff's equal protection claims, with leave to amend same Id., in order to allow Plaintiff to properly plead intentional discrimination in his Class of One claim and to properly plead his selective enforcement claim. (Doc. No. 66, p. 25). Ruling upon Plaintiff's Motion to Reconsider said Order, the Honorable Court issued an Amended Order (Doc. No. 83) reaffirming aforesaid Order, except for an inconsistency in same which limited Plaintiff's claims against Defendant, Point and Pay, LLC. Said Order granted Plaintiff leave to Amend his equal protection claims against Moving Defendants within 14 days of said Order. Id.

Pursuant to said directive, Plaintiff timely filed a Second Amended Complaint (Doc. No. 84) on November 12, 2013[1], which added facts pleading intentional discrimination and added a replead Count V Selective Enforcement Equal Protection claim against Moving Defendants.

The Honorable Court is aware of the factual background of this matter and as such, the same will not be set forth at length herein. Plaintiff's Second Amended Complaint alleges the requisite intentional discrimination in its Count IV Class of One Equal Protection claim, in pertinent part:

"58. Upon information and belief the aforesaid communication was improperly and wrongfully based in part on the financial interest and gain they achieve relative to the collection of taxes as well as the adversarial nature of Plaintiff's relationship with the Luzerne County Tax Claim Bureau as well as with Luzerne County including incidents relative to the Mines nightclub and KOZ requests, the latter referenced in U.S. District Court, Middle District of Pennsylvania case docket number 3:11-617, by the improper manner of only identifying, reporting and embarrassing Plaintiff as having bounced electronic checks to the public through the Wilkes-Barre Times Leader, which was done with malicious and bad faith intent to injure Plaintiff and with the knowledge that Plaintiff would be injured as a result thereof."

The requisite intentional discrimination in the Count IV Selective Enforcement Equal Protection claim alleges:

" 66 Defendants selectively and discriminatorily enforced the facially valid law(s) for the collection of Luzerne County's property real estate taxes by treating Plaintiff differently from other taxpayers who were similarly situated, as set forth in Paragraphs 55-57 herein, in violation of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution.
67. Said selective and discriminatory enforcement of the aforestated facially valid law(s) was upon information and belief improperly and wrongfully based upon the considerations as set forth in Paragraph 58 herein, which was done with malicious and

---

[1] Moving Defendants move in their Brief for dismissal of Plaintiff's pleading (See Doc. No. 89, p. 2, f.n. 1), claiming the inapplicability of the 3 day extension period in Fed.R.Civ.Pro. 6(d) for a time period specified in a Court Order [See Fed.R.Civ.Pro. 6(a), which applies to times periods specified in, inter. alia., Court Orders] which is served by electronic means pursuant to Fed.R.Civ.Pro. 5(b)(2)(E), as was the case here. Said argument lacks merit. Additionally, the dicta in the Florida case cited by Moving Defendants therein, Bacon v. Stiefel Laboratories, Inc., 714 F.Supp. 2d 1186, 1189, f.n. 1 (S.D. FLA 2010) makes a distinction inapplicable to the instant case, or was incorrectly decided, but in any event said Court accepted the submissions therein with 3 days added on "in the interests of justice", which Moving Defendants fail to mention.

bad faith intent to injure Plaintiff and with knowledge that Plaintiff would be injured as a result."

Moving Defendants' Brief (Doc. No. 89, at p. 2) begins their alleged summary of the facts with "Mr. Greco is an admitted felon and tax scofflaw." (Doc. No. 84 at pp. 9-10). <u>This statement is precisely the point</u>, as it exemplifies Moving Defendants' motivations in intentionally discriminating against Plaintiff and treating him differently from similarly situated taxpayers, in violation of his civil rights. Additionally, Mr. Greco is assuredly not a tax "scofflaw", said word being defined in the 2013 edition of the Merriam Webster Dictionary as a "contemptuous law violator". He paid all taxes due and then paid the outstanding taxes when he became aware of the bounced payments (Doc. No. 84, Paragraphs 11-14, 31).

## II. <u>ISSUES PRESENTED</u>

1. Whether Plaintiff's Count II - Negligence claims plead in the Seconded Amended Complaint are barred by Defendants' newly raised economic loss doctrine?

Suggested Answer: In the negative.

2. Whether Plaintiff's Section 1983 claims plead against Defendant Northeast Revenue in the Second Amended Complaint are available pursuant to the newly raised issue of *respondeat superior* bar where a policy or custom of same directly caused Plaintiff's constitutional harm?

Suggested Answer: In the affirmative.

3. Whether Plaintiff has sufficiently plead intentional discrimination in Count IV – Class of One Equal Protection claim in the Second Amended Complaint?

Suggested Answer: In the Affirmative.

4. Whether Plaintiff has sufficiently plead a Count V - Selective Enforcement Equal Protection claim in the Second Amended Complaint?

Suggested Answer: In the Affirmative.

### III. ARGUMENT

#### A. LEGAL STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. Pro. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. See Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. Id. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See* Gould Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.Pro. 8(a). "The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. Twombly, supra. at 555. However, mere conclusory statements will not do: "a complaint must do more than allege the plaintiff's entitlement to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. Id. "While legal

4

conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," Twombly, supra. at 570, meaning enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element". (emphasis added) Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(quoting Twombly, supra. at 556). "The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully". Iqbal, supra. at 1949. "When there are well-placed factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief". Id.

Pursuant to Fowler v. UPMC Shadyside, supra. at 210, 211, the Third Circuit discussed the appropriate standard for evaluating motions to dismiss, as follows:

> The Supreme Court began its rejection of that test in Twombly holding that a pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do". Twombly, 550 U.S. at 555, 127 S. Ct. 1955; Phillips, 515 F.3d at 232. In Phillips, we discussed the appropriate standard for evaluating Rule 12(b)(6) or 12(b)(1) motions in light of the anti-trust context presented in Twombly, holding that the acceptable statement of the standard remains: "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233 (internal quotations and citation omitted). The Supreme Court's opinion in Iqbal extends the reach of Twombly, instructing that all civil complaint must contain "more than an unadorned the defendant unlawfully – harmed - me accusation." Iqbal, 129 S. Ct. at 1949.

Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions. Id. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context - specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (Emphasis added).

See also, Malleus v. George, 641 F.3d 560 (3d Cir. 2011).

"While legal conclusions can provide the framework of a complaint they must be supported by factual allegations". Iqbal, supra. at 1949. "A claim is factually plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, supra. at 570). See also Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238 (E.D. Pa. 2007) (The need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages, plaintiffs may be unaware of the identities and roles of relevant actors and unable to conduct a pre - trial investigation to fill in the gaps).

Furthermore, as stated in Sixth Camden Corp. v. Evesham, 420 F.Supp. 709, 720 (1976 DC NJ):

> No matter how unlikely it may seem that plaintiff will prove its entitlement to relief federal policy favors dispositions on the proofs rather than on the pleadings. Melo - Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir. 1965); 5 Wright & Miller, Federal Practice & Procedure § 1357 at 603 (1969). And [sic] the plaintiff should be granted every opportunity to

6

<u>cure defects in its pleadings by amendment, no matter how unpromising its initial attempt.</u> Id. at 611 – 614 (emphasis added).

## B. <u>PLAINTIFF'S COUNT II NEGLIGENCE CLAIMS ARE NOT BARRED BY THE ECONOMIC LOSS DOCTRINE</u>

Although Moving Defendants are quick to assert the "law of the case doctrine" in their Brief to affirm the Court's ruling limiting Plaintiff's Negligence Claims contained in Count II, Moving Defendants improperly raise a new basis to dismiss in its entirety Plaintiff's remaining claims therein as well as Plaintiff's construed negligence claims in Count III, in the form of the economic loss doctrine. (Doc. No. 89, p.p. 6-8). "Law of the case doctrine" posits that, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. <u>Pepper v. U.S.</u>, 131 S. Ct. 1229 (2011). Because the Honorable Court has already specifically ruled on Plaintiff's pleading of its negligence claims, as re-alleged in Counts II and III of Plaintiff's Second Amended Complaint, the "law of the case doctrine" precludes consideration of Moving Defendants' newly made economic loss doctrine argument to dismiss these same claims in their entirety. <u>Id.</u>

Alternatively, should the Honorable Court address the merits of Moving Defendants' economic loss doctrine argument, said doctrine does not apply to the negligence claims made in the instant case. When a <u>product</u> fails to conform to contract for sale and only economic losses result, the parties' recovery one against the other for economic losses should be limited to an action on the contract and no additional recovery in negligence or strict liability is permitted. <u>N.Y. State Elec. & Gas vs. Westinghouse</u>, 387 Pa. Super. 537, 564 A.2d 919 (1989).

7

The economic loss doctrine was explained in Pflumm Paving & Excavating, Inc. vs. Foundation Services Co., 816 A.2d 1164, 1168, 1169 (Pa. Super. 2003):

> These holdings are consistent with our cases regarding the economic loss doctrine raised in Pflumm's second issue. Pflumm argues that the economic loss doctrine does not preclude its right to recover under Section 552. [Restatement (Second) of Torts] We disagree. This Court has consistently denied negligence claims that cause only economic loss. In Aikens vs. Baltimore and Ohio Railroad Company, 348 Pa. Super. 17, 501 A.2d 277 (1985), employees of a plant damaged by a train derailment filed a lawsuit against the railroad for lost wages. This Court held that "no cause of action exists for negligence that causes only economic loss". *Id.* at 279. The Court reasoned that <u>negligent harm to economic advantage alone is too remote for recovery under a negligence theory. The reason a plaintiff cannot recover stems from the fact that the negligent actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest.</u> Id. (citations omitted). The Court added that "allowance of a cause of action for negligent interference with economic advantage would create an undue burden upon industrial freedom of action, and would create a disproportion between the large amount of damages that might be recovered and the extent of the defendant's fault". Id. (citation omitted).
>
> <u>To allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action.</u> Such an outstanding burden is clearly inappropriate and a danger to our economic system . . . [Extending negligence liability to embrace purely economic loss] would clearly lead to problems in consistency and foreseeability, and could be harmful in scope. (Emphasis added).

Additional explanation of the doctrine which was stated in Valley Forge Con. & Visitor's Services, 28 F.Supp.2d 947, 951 (E.D. Pa. 1998):

> <u>The economic loss doctrine has most commonly been invoked in the products liability context to preclude tort actions for product malfunctions</u> that did not cause physical injury or damage to <u>tangible property . . . Economic losses include damages due to loss of customers, sales and profits.</u> See 2-J Corp 126 F.3d at 541; Palco Linings, Inc. vs. Pavex, Inc., 755 F.Supp. 1269, 1270 (M.D. Pa. 1990) . . .
>
> <u>That a Plaintiff may not sue in tort for economic losses arising from a breach of contract,</u> however, does not preclude the possibility of a

8

tort action between parties to a contract. Stout vs. Peugeot Motors of America, 662 F.Supp. 1016, 1018 (E.D. Pa. 1986). (Emphasis added).

As further stated in Sun Co. vs. Badger Design & Constructors, 939 F.Supp. 365, 371 (E.D. Pa. 1996):

> The economic loss doctrine presents a second alternative. "In general, Pennsylvania courts have been reluctant to permit tort recovery for contractual breach." Wood & Locker, Inc. v. Doran and Assocs., 708 F.Supp. 684, 689 (W.D. Pa .1989) citing Glazer vs. Chandler, 414 Pa. 304, 200 A.2d 416, 418 (1964); Brown vs. Moore, 247 F.2d 711, 716 n. 6 (3d Cir), cert. denied, 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957)). The economic loss doctrine "prohibits plaintiff from recovering in tort economic losses to which their entitlement flows only from a contract". Duquesne Light Co. vs. Westinghouse Elec. Corp., 65 F.3d 604, 618 (3d Cir. 1995). "The rational of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." Palco Linings, Inc. vs. Pavex, Inc., 755 F.Supp. 1269, 1271 (M.D. Pa. 1990); Compensation for losses suffered as a result of a breached agreement "requires an analysis of damages which were in the contemplation of the parties at the origination of the agreement, an analysis within the sole purview of contract law." Auger vs. Stouffer Corp., No. 93-2529, 1998 WL 364622 at *3 (Aug. 31, 1998 E.D. Pa.); In order to recover in negligence, there must be a showing of harm above and beyond disappointed expectations evolving solely from a prior agreement. A buyer, contractor, or subcontractor's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." Palco Linings, Inc. vs. Pavex, Inc., 775 F.Supp. at 1271 . . .

Notably absent from the Amended Complaint are any allegations that defendants inflicted harm beyond Plaintiff's disappointed expectations and dissatisfaction with Defendants' performance of the Contract's terms. (emphasis added).

Harm to reputation alone constitutes economic loss. Rentzell v. Dollar Tree Stores, Inc., 2011 WL 4528367, *3 (E.D. Pa. 2011). See also KBT Corp. v. Ceridan Corp., 966 F.Supp. 369, 377 -378 (E.D. Pa. 1997) (applying economic loss doctrine and dismissing negligence claim based on alleged dissemination of negligently collected data that reflected poorly on plaintiff).

9

In the instant case, it is clear that Plaintiff's claims in negligence against Moving Defendants are foreseeable negligence claims based in tort and not in contract for disappointed contractual benefit of the bargain expectations and are not for reputation damages alone. Pflumm; Valley Forge Con. & Visitor's Services; Sun Co.; Rentzell; supra. Therefore, the economic loss doctrine is clearly inapplicable to bar said claims.

C. **RESPONDEAT SUPERIOR LIABILITY IS AVAILABLE FOR § 1983 CLAIMS WHERE A POLICY OR CUSTOM DIRECTLY CAUSES THE HARM**

Responding Defendant, Northeast Revenue makes another argument in its Brief for the first time, requesting dismissal of Plaintiff's Class of One and Selective Enforcement Equal Protection claims against it, pursuant to Miller v. Hoffman, 1998 WL 404034 (E.D. Pa. 1998) (Doc No. 89, p.p. 8-9, 13, 14). Plaintiff submits that the "Law of the Case Doctrine" again applies to bar consideration of same. Pepper, supra. (See Doc. No. 66, p.25, specifically ruling on deficiencies in Plaintiff's prior pleading of his equal protection claims).

Alternatively, should the Honorable Court address the merits of this issue, Plaintiff responds as follows. As stated in Miller v. Hoffman, 1998 WL 404034, *5 (E.D. Pa. 1998):

> The same standard [Monell Liability] applies where a plaintiff names a private corporation, acting under color of state law, as a defendant in a Section 1983 case. Miller v. City of Philadelphia, No. CIV.96-3578, 1996 WL 683827, at *3-4 (E.D. Pa. Nov. 26, 1996). While a private corporation cannot be held vicariously liable for the actions it its staff, it may be held liable if "it knew of and acquiesced in the deprivation of plaintiffs' rights." Id. At *4 (citations omitted). To meet this burden with respect to a private corporation, the plaintiff must show that the corporation, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiffs'] constitutional harm." Id. (quoting Stoneking v. Bradford Area

Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989), cert. denied, 493 U.S. 1044, 110 S. Ct. 840, 107 L.Ed.2d 835 (1990)). (emphasis added).

See also Victory Outreach Center v. Melso, 371 F.Supp. 2d 642, 646 (E.D. Pa. 2004), citing the above language in Miller.

In the instant case, Plaintiff alleged such a policy or custom by (dismissed party) Defendant, Luzerne County (doc. No. 84, paragraphs 59 and 68), but inadvertently failed to change the party in same to Defendant, Northeast Revenue[2]. Alternatively, should the Honorable Court rule this amendment to be necessary, amendment rather than dismissal is appropriate. Sixth Camden Corp., supra.

## D. PLAINTIFF'S CLASS OF ONE EQUAL PROTECTION CLAIM SUFFICIENTLY ALLEGES INTENTIONAL DISCRIMINATION

One of the elements of a class of one equal protection claim is intentional discrimination. PG Publ. Co. v. Aichele, 705 F.3d 91, 114, 115 (3rd. Cir. 2013).[3] Although Moving Defendants claim that Plaintiff has not alleged a plausible inference of an intent to discriminate, this is simply not the case. See Twombly, Phillips, Iqbal, supra.

Plaintiff has alleged well-plead facts that plausibly support his claim that Moving Defendants communicated the allegation of bounced checks to the Wilkes-Barre Times Leader, "based in part upon its financial interest and gain they receive relative to the collection of taxes as well as the adversarial nature of Plaintiff's relationship with the Luzerne County Tax Claim Bureau as well as with Luzerne County including incidents relative to the

---

[2] It is reasonable to assume that Defendant Rodgers as President of Northeast Revenue, and Defendant Shamany, as Manager of same, had authority to make such a policy or custom on behalf of its principal (Doc. No. 84, paragraphs 4, 5).

[3] As held by Judge Caputo in Dombrosky v. Stewart, 2012 WL 3686779 pages 6, 7 (M.D. Pa. 2012), malicious or bad faith intent to injure is required to be shown in selective enforcement claims not involving a protected class or a constitutional right. Jewish Home of Eastern Pa. v. Centers for Medicare & Medicaid Servs., 693 F.3d 359, 363 (3rd. Cir. 2012) also holds a requirement of evidence of discriminatory purpose in selective enforcement claims.

11

Mines nightclub and KOZ requests, the latter referenced in [pending] U.S. District Court, Middle District of Pennsylvania case docket number 3-11-617 . . ."(Doc. No. 84, paragraph 58).[4] Moving Defendants' argument that the financial interest or gain they achieved relative to their collection of taxes does not raise a plausible inference of an intent to discriminate merely because "every delinquent taxpayer has an adversarial relationship with the tax claim bureau by virtue of its charge" begs the question whether discovery will bear out Plaintiff's factual contention of intentional discrimination by Moving Defendants against him based upon this motivation. See Phillips, supra.

Moving Defendants claim that Plaintiff's plead adversarial relationship with Luzerne County, which lead to the referenced (pending) Middle District litigation does not raise a plausible inference of an intent to discriminate by Moving Defendants is also incorrect. Id. (Doc. No. 89, p.p. 12, 13). Although dismissed from this litigation by the Honorable Court, Luzerne County is not an "unrelated" non-party, as Northeast Revenue was retained by Luzerne County to collect delinquent Luzerne County property taxes during the relevant time period, including Plaintiff's taxes at issue.[5]

Moving Defendants' claim that their collection of delinquent taxes could not have motivated their bounced check allegations to the Times Leader is incorrect (Doc. No. 89, pp. 11, 12). (Discovery in the instant case has already shown that during the relevant time period Northeast Revenue was paid a percentage of tax claim monies it collected). The ease, speed and actual collection of Plaintiff's delinquent real estate taxes at issue motivated, at least in

---

[4] While Moving Defendants claim that these alleged facts are not "direct" evidence of intentional discrimination (Doc. No. 89, p. 10) this is not the legal standard of a plausible inference of an intent to discriminate in a motion to dismiss. See Legal Standard set forth at length above. These well plead facts can also be construed as evidence of Moving Defendants' intentionally discriminatory investigation of the alleged bounced checks (See Doc. No. 84, Paragraph 55), contrary to their contention (Doc. No. 89, p. 11, fn 2). Alternatively, should the Honorable Court rule amendment on this issue to be necessary, amendment rather the dismissal is appropriate. Sixth Camden Corp., supra.

[5] Interestingly, Moving Defendants make no comment on the referenced litigation itself.

12

part, Moving Defendants' reporting allegations of Plaintiff bouncing checks to the newspaper, as plead by Plaintiff[6].

Moving Defendants' claim that the record does not show a plausible inference of their intent to discriminate against Plaintiff due to their (repeated) mea culpa that Defendant Rodgers harbored no intent to discriminate against Plaintiff merely because he is quoted in the subject article (Doc. No. 84-1) as stating "[h]opefully, it's a mistake" and the statement in said article that various properties of Plaintiff were returned by Defendant Northeast Revenue to default status on the public tax claim computer database (therefore, Moving Defendants argue, *they* did not make public the checks, through *their* initiative) ignores the (subsequently proven to be incorrect) *verification* by Moving Defendants in said article that Plaintiff had *bounced the checks*, as well the publicly made threat in said article by Defendant Rodgers of possible criminal charges against Plaintiff: "If not . . . we'll report this to the District Attorney's Office if necessary". (Doc. No. 84-1, Doc. No. 89, p. 13). Also, the public record will show that the (front page) companion article directly above said article is headlined "Tax claim is treating all equally". (See Exhibit "A" attached hereto. Matters of public record can be considered in deciding a motion to dismiss. See Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n. 2 (3rd Cir. 2006); Holloway v. Shaw, Civ. No. 1:CV-10-2344, 2011 U.S. Dist. LEXIS 29795, \*\* 2-3 (M.D. Pa. March 23, 2011)). Exhibit "A" hereto also shows a plausible inference of Moving Defendants' intent to discriminate against Plaintiff, by [singling him out as well as] making an example of him in Moving Defendants' campaign to show they were "treating all equally". Therefore, Plaintiff has created a plausible inference that Moving Defendants

---

[6] Moving Defendants' claim that their percentage commission payment on Plaintiff's tax payment made after the bounced checks allegation was guaranteed by statute, i.e. by redemption or at tax sale, ignores the ease, speed, and actual collection motivation of Moving Defendants of singling out Plaintiff for embarrassment in the newspaper by alleging he bounced the checks (See Doc. No. 89, p. 11).

13

intentionally discriminated against him, in his Class of One Equal Protection Claim. (The same arguments herein support an inference of discriminatory purpose in Plaintiff's Selective Enforcement Equal Protection Claim).

## E. PLAINTIFF HAS IDENTIFIED A LAW THAT WAS ENFORCED AGAINST HIM IN A DISCRIMINATORY MANNER

Contrary to Moving Defendants' claim, Plaintiff has identified a law that "was applied to him differently than others", curing the Court's directive (Doc. No. 65, p. 25; Doc. No. 89, p. 14). In Plaintiff's subject pleading he sets forth "Defendants selectively and discriminatorily enforced the facially valid law(s)[7] for the collection of Luzerne County's property real estate taxes..." (emphasis added). (Doc. No. 84, paragraph 66). Plaintiff's allegations of misconduct in his selective enforcement claim for improper Defendants' improper investigation and informing the Times Leader that the e-checks bounced are unquestionably averments of a different application of those laws (pertaining to the collection of delinquent property taxes) to him than to others similarly situated. (Doc. No. 84, paragraphs 21, 55 - 57, 66, 68) Hill v. City of Scranton,[8] 411 F.3d 118, 125 (3rd. Cir. 2005). Therefore, Plaintiff's selective enforcement equal protection claim should not be dismissed.

## IV. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss should be denied.

---

[7] By judicial notice, The Real Estate Tax Sale Law, 72 P.S. § 5860.101 et. seq. and the Municipal Claims and Tax Liens Act, 53 P.S. § 7101. et. seq.
[8] Moving Defendants' argument that Plaintiff's selective enforcement claim is actually a defamation claim has effectively been rejected by the Court. (Doc. No. 89, p. 15; Doc. No. 66, p. 25).

14

Respectfully Submitted,

/s/ Robert M. Cohen
Robert M. Cohen, Esq.
Professional Office Suites
22 East Union St.
Wilkes-Barre, PA 18701
(570) 822-9006
PA ID #44551
Megan P. Maguire, Esq.
590 Rutter Ave.
Kingston, PA 18704
(570) 288-7799
PA ID #53926
Attorneys for Plaintiff

Date: 12/23/13