**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS GRECO,** | : | |
| **Plaintiff** | : | |
| | : | Civil Action No. 3:12-2576 |
| v. | : | |
| **MICHAEL SENCHAK, *et al*.,** | : | (JUDGE MANNION) |
| | : | |
| **Defendants** | : | |
| | : | |

# M E M O R A N D U M

Plaintiff Thomas Greco was listening to a local talk radio show when he was surprised to hear a story about himself. A local newspaper had reported that six electronic checks he had recently submitted for payment of back taxes on various properties he owned had been returned because there were not sufficient funds to pay them. Plaintiff was alarmed by this, as he had neither paid nor authorized the payment of the taxes by means of any electronic checks, and had already informed the collection agency that he had not authorized the online payments. Fearing that his identity or account information had been stolen, plaintiff alerted federal authorities that someone had been paying his back taxes in his name but without his permission. Angry that someone had apparently set him up by writing bad checks in his name, that the collection agency had seemingly divulged the bouncing of the checks to media outlets, and that he had been embarrassed and harmed by the fact

that writing bad checks had been attributed to him, plaintiff brought the instant suit, claiming that the collection agency and its agents had violated the Equal Protection Clause of the Fourteenth Amendment and various provisions of state law.

I.  **FACTUAL BACKGROUND**

Plaintiff Thomas Greco's amended complaint, (Doc. 84), alleges that sometime before August 2, 2010, an employee of the Luzerne County Tax Claim Office notified plaintiff's bookkeeper, Mary Tencza, that plaintiff owed back taxes on several of his properties. On August 2, 2010, plaintiff sent Ms. Tencza to the Tax Claim Office to pay the delinquent taxes, but when she arrived, an office employee told her that the amount due was less than originally stated, because the county had already received several online payments for plaintiff's taxes. Ms. Tencza called plaintiff, and while on the phone with him, informed the tax bureau employee that he had no knowledge of such online payments, had not authorized them, and wanted information about who had paid them, including bank account information. The tax office employee declined to provide that information. Plaintiff asked the clerk if he could pay the total original amount of taxes due, including the taxes allegedly already paid, but the clerk said the computer would not allow him to pay more than he owed. Ms. Tencza then made full payment of the remaining amount and received a receipt for the payment.

Ten days later, on August 12, plaintiff was listening to a local radio station when the radio host began "ridiculing [him] and questioning his financial stature as a result of a newspaper article on August 12, 2010, in the Wilkes-Barre Times Leader." (Doc. 84, at 6). Plaintiff read the paper and discovered that it contained an article about him, saying that he had bounced six electronic checks totaling $41,911 as payment for real estate taxes. Plaintiff instructed Ms. Tencza to call the Claims Office to inquire why plaintiff was being blamed for the bad checks, especially after he had already told the clerk that the checks were not his. He also double-checked with his own bank to ensure that any checks he had written had not bounced, and confirmed that his account had not had any bounced checks.

Outraged by the Times Leader article and puzzled by the anonymous checks in his name, plaintiff contacted the U.S. Secret Service to request an investigation into the incident. Plaintiff reviewed records[1] supplied by the tax office and Northeast Revenue Services, LLC, ("NRS"), the collection agent and independent contractor for the county tax claim office. The next day, plaintiff met with defendant Sean Shamany, an NRS manager responsible for Luzerne County tax collection, to explain that he had not authorized the bad checks and to ask why no investigation was undertaken when he had previously denied writing or authorizing the checks. Plaintiff also asked why

---

[1]Plaintiff refers to this only as a "backup," and the court is not aware of what material was included with this "backup." (Doc. 84, at 7).

3

the county had not contacted him or investigated the matter before releasing information about him to the Times Leader, and informed Shamany that the U.S. Secret Service was conducting an investigation into the incident. Plaintiff also inquired whether any other payments from other parties had bounced. Shamany assured plaintiff that there were safeguards to verify all checks, that any mistake would be the fault of defendant Point and Pay, LLC, which ran the online tax collection system, and that the problem was being investigated. He also told plaintiff that approximately 5 or 6 other people had bounced electronic checks as property tax payments.

A few days later, plaintiff received a letter, dated August 11, 2010, from defendant John Rodgers, president of NRS, advising plaintiff that the checks had bounced and threatening criminal charges if he did not pay $41, 911 within ten days of the date of the letter. Plaintiff met thereafter with Secret Service agents, who agreed to freeze the county tax office records and NRS' records. The Secret Service spoke with NRS officials. The Secret Service determined that defendant Michael Senchak had submitted the bounced checks on plaintiff's behalf, without his knowledge or authorization. The U.S. Attorney's office for the Middle District of Pennsylvania confirmed via letter that plaintiff was not responsible for the bounced checks. Plaintiff advised the Times-Leader of the U.S. Attorney's letter in April 2011.

After plaintiff was made aware of and paid his back taxes, NRS continued to post incorrect tax sale notices on his properties.

## II. PROCEDURAL BACKGROUND

Defendants removed this suit from the Luzerne County Court of Common Pleas on December 26, 2012. (Doc. 1). Plaintiff's original complaint alleged fraud against Michael Senchak, negligence against NRS and Point and Pay, tortious misfeasance and/or malfeasance against NRS, Sean Shamany, and John Rodgers, a claim under 42 U.S.C. §1983 for violations of the 14th Amendment's Equal Protection Clause against NRS, Rodgers, Shamany, and Luzerne County. Deciding motions to dismiss filed by the defendants, the court denied Point and Pay's motion to dismiss, and granted in part and denied in part the motion to dismiss of NRS, Rodgers, Shamany, and Luzerne County. (Docs. 65, 83).

Specifically, the court denied defendant's motion to dismiss the tortious malfeasance and misfeasance claims, although the court explicitly noted that it was construing them as negligence claims, and did not grant plaintiff leave to amend the tortious malfeasance and misfeasance claims. The court dismissed the equal protection claims, but granted leave to amend those claims. The court dismissed most of the negligence claims against NRS for failure to bring them within the statute of limitations, but did allow negligence claims arising from publication of media accounts of plaintiff's financial status and the posting of incorrect tax sale notices. The court dismissed the municipal liability claim, and did not grant leave to amend that claim. Accordingly, no claim remains against Luzerne County.

Defendant Michael Senchak is proceeding pro se. He has not answered the complaint or participated in this suit whatsoever. The docket reflects that any mail sent to his on-file address has been returned as undeliverable. (Docs. 44, 46, 55, 56, 59, 86, 96, 101, 102). Defendant RBA Professional Data Systems, Inc. has not answered the complaint or otherwise participated in the suit. No attorney has filed a notice of appearance on RBA's behalf.

Before the court now is the motion to dismiss the amended complaint filed by NRS, Shamany, and Rodgers. (Doc. 88). The motion has been fully briefed, (Docs. 89, 91, 93), and is ripe for decision.

### III.   STANDARD OF REVIEW

The defendant's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly,

550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

**IV.   DISCUSSION**

Plaintiff's amended complaint, (Doc. 84), brings five claims. Count I is for fraud against Michael Senchak. Count II is a negligence claim against NRS, Point and Pay, and RBA Professional Data Systems, Inc., an agent or independent contractor for NRS and/or Luzerne County and/or Point and Pay. Count III is a tortious malfeasance and misfeasance against Rodgers, Shamany, and NRS. Count IV is a §1983 claim for violation of the equal protection clause under the 14th Amendment under a "class of one" theory against NRS, Rodgers, and Shamany. Count V is a §1983 claim for violation of the equal protection clause under the 14th Amendment under a "selective enforcement" theory.

Defendant moves to dismiss the claims against NRS, Rodgers, and Shamany: Count II for negligence, Count III for tortious misfeasance and malfeasance, and Counts IV and V, §1983 claims for violations of the equal

8

protection clause.

**§1983 Standard**

Section 1983 does not itself bestow substantive rights, but instead creates a remedy for violation of a person's constitutional rights. Gonzaga Univ. v. Does, 536 U.S. 273 (2002). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. To establish a claim under §1983, a person must prove that someone deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

Liability under §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. See Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997)(overruled on other grounds)(citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Acquiescence exists where "a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails

to act to stop the subordinate from doing so." Festa v. Jordan, 803 F.Supp. 2d 319, 325 (M.D. Pa. 2011)(quoting Robinson, 120 F.3d, at 1294).

A municipality is a "person" for purposes of §1983. See Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). But §1983 does not allow municipal liability under a theory of respondeat superior. Id. A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. Id. The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id.

**Fourteenth Amendment Equal Protection Clause - Class of One**

The Fourteenth Amendment mandates that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "The purpose of this clause is 'to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" PG Pub. Co. v. Aichele, 705 F.3d 91, 114 (3d Cir. 2013)(*citing* Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). In order

to make out a prima facie case under the class of one theory, in which a claimant asserts that he himself, and not a particular group, was subject to discriminatory treatment, plaintiff must show that he was (1) intentionally (2) treated differently from others similarly situated, and (3) that there was no rational basis for the difference in treatment. Perano v. Township of Tilden, 423 F.App'x 234, 238 (3d Cir. 2011). The court determined in its earlier motion to dismiss that plaintiff has adequately pleaded differential treatment from similarly situated persons and that there was no rational basis for him being treated differently. (Doc. 65, at 25). The court granted him leave to amend his pleadings to properly allege that he was intentionally discriminated against.

Intentional Discrimination

To make out a claim for intentional discrimination requires evidence of a "malicious or bad faith intent to injure." Dombrosky v. Stewart, 2012 WL 3686779, at *6 (M.D. Pa. 2012)(quoting Homan v. City of Reading, 15 F.Supp. 2d 969, 702 (E.D. Pa. 1998)). The Third Circuit has said that a showing of intent must consist of more than allegations of "unequal treatment or adverse effect." Jewish Home of Eastern PA v. Centers for Medicare and Medicaid Services, 693 F.3d 359, 363 (3d Cir. 2012). Rather, a party must show that "the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." Id.

11

Here, plaintiff has alleged that he was treated differently from other people who bounced checks for collection of property taxes because NRS and its officers informed the Times Leader of the checks that had allegedly bounced.[2] He alleges that the communication with the newspaper was "based in part on the financial interest and gain [defendants] achieve relative to the collection of taxes as well as the adversarial nature of Plaintiff's relationship with the Luzerne County Tax Claims Bureau as well as with Luzerne County" regarding incidents which are the subject of another case plaintiff has pending in this district. (*See* Civil Action No. 3:11-0617 (ARC)). (Doc. 84, ¶58).

While the court agrees that of course the company responsible for collecting taxes has a financial interest in collecting them, the court does not see the logic in plaintiff's claim that financial interest caused defendants to reach out to the Times Leader and tell them about the bounced checks. The defendants have an interest in the payment of the taxes of all of the similarly situated individuals who bounced checks. Plaintiff does not allege that his payments were different in any way that would make it plausible that he was intentionally singled out and discriminated against. Plaintiff does not allege

---

[2]Plaintiff also alleges that he was treated disparately because defendants refused and/or failed to make proper inquiries after he informed them that he had not made or authorized online payments. The court will not consider this allegation, as plaintiff has only adequately alleged that there were other taxpayers who bounced checks whose names were not given to the paper. He makes no allegation that there were taxpayers whose requests for investigation over payments illegitimately made in their names were heeded while his were not.

why or how this factor caused defendants to treat him differently and report his, and nobody else's, bounced checks to the newspaper. Plaintiff argues that reporting the bounced check to the newspaper was motivated by the ease, speed, and actual collection of tax monies, but again does not make plausible that it caused him to be singled out for discrimination. Moreover, even if this motivation can explain the alleged action, it does not indicate a malicious or bad faith intent to injure plaintiff, but rather a legitimate motivation to collect monies owed. This allegation therefore does not sufficiently indicate intentional discrimination on the part of defendants.

As to the claim that plaintiff had an antagonistic relationship with Luzerne County that caused defendants to intentionally discriminate against him, plaintiff has failed to plausibly allege the existence of intentional discrimination on the part of these defendants. While a showing of animus or an adversarial relationship may support a class of one claim where plaintiff alleges specific incidents leading to animosity on the part of defendants, *see* Bertovich v. Village of Valley View, Ohio, 431 F.App'x 455, 459, n. 6 (6th Cir. 2011)(*discussing* Esmail v. Macrane, 53 F.3d 176, 178 (7th Cir. 1995)), plaintiff's claim here is too attenuated to support his, because, as discussed below, the adversarial relationship on which he relies exists between him and non-parties to this lawsuit.

The other lawsuit plaintiff references to show antagonism and animus names a multitude of defendants - the City of Wilkes-Barre and Wilkes-Barre

13

officials, Kings College and various Kings employees, and Luzerne County. None of those defendants are defendants in this case. Luzerne County has been dismissed from this action. Plaintiff does not allege with any particularity that he had animosity with anyone in the tax office or with defendants before the events giving rise to this suit. Furthermore, plaintiff's other lawsuit is completely unrelated to anything having to do with tax collection. There, plaintiff complains of governmental and law enforcement actions taken against his nightclub and its patrons. Plaintiff claims these actions are discriminatory and the result of interference from government and college officials. The nightclub case, however, does not rely on any of the same facts as the events at issue here, and does not involve the same parties.

Plaintiff argues that Luzerne County cannot reasonably be considered an unrelated non-party, because the NRS defendants are contractors for Luzerne County. Therefore, he contends, NRS and its employees shared the county's alleged animosity for plaintiff stemming from the nightclub incidents and lawsuit. But to make that leap is pure conjecture, as he has not alleged intent on the part of the defendants. There is no allegation that the alleged animosity between plaintiff and the County extended to NRS and its employees, and no allegation that Shamany and Rodgers or NRS had any knowledge of or interaction with plaintiff previous to the events of this case. Plaintiff does not even allege that NRS, Rodgers, and Shamany had knowledge of the nightclub suit against Luzerne County, much less that NRS

defendants were aware that plaintiff had an allegedly adversarial relationship with the county. *See* Robinson, 120 F.3d, at 1294.

Plaintiff's adversarial relationship with a non-party is simply not sufficient to make plausible his claim that NRS, Rodgers, and Shamany were acting with the intent to injure him. Even accepting all of plaintiff's allegations as true, he has not adequately alleged a class of one equal protection claim under §1983, because he fails to adequately allege intent on the part of the persons he seeks to hold liable. While plaintiff may understandably have been embarrassed and upset that this information was reported to the newspaper, "the law cannot provide a constitutional remedy for every situation where a party may feel slighted; claims appealing to the Equal Protection Clause must meet a higher bar." PG Pub. Co. v. Aichele, 705 F.3d 91, 115 (3d Cir. 2013). His class of one claim is therefore **DISMISSED**.

**Fourteenth Amendment Equal Protection Clause - Selective Enforcement**

In order to allege a selective enforcement claim, a party must show "discriminatory enforcement of a facially valid law." Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). The court's previous memorandum allowed plaintiff to amend this claim to allege that a law was applied to him differently. (Doc. 65, at 25). Plaintiff now alleges that defendants "selectively and discriminatorily enforced the facially valid law(s) for the collection of Luzerne County's property real estate taxes." (Doc. 84, ¶ 66). This allegation is merely

a formulaic recitation of the elements of the claim, and does not raise the claim to the level of plausibility, particularly because plaintiff fails to identify a specific law that he believes has been enforced selectively against him.[3] Plaintiff's selective enforcement claim is thus **DISMISSED**.

**Respondeat Superior Liability against NRS and State Law Claims**

Defendants additionally argue that "a private corporation cannot be held vicariously liable for the acts of its staff" in §1983 claims, and that therefore NRS cannot be liable for the actions of Mr. Rodgers and Mr. Shamany. Because the court has determined that the §1983 claims are insufficient, the court will not address this issue.

As the claims over which the court has original jurisdiction are dismissed, the court declines to exercise its supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(c)(3). Accordingly, plaintiff's state law claims are **DISMISSED**.

---

[3] Plaintiff attempts to amend this deficiency in his brief in opposition by noting that "The Real Estate Tax Sale Law, 72 P.S. §5860.101 et seq." and the "Municipal Claims and Tax Liens Act, 53 P.S. §7101 et seq." were enforced selectively here. (Doc. 91). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Heim v. York County Prison, 2013 WL 1414638, at *6, n. 7 (M.D.Pa. 2013). But even if the court were to take notice of these statutes, plaintiff does not indicate which provisions have been violated. Moreover, just as plaintiff's class of one claim fails to properly allege intentional discrimination, so too does the selective enforcement claim, as it relies on the same allegations to demonstrate intent. In short, this claim, even as amended, is formulaic, unspecific, and cannot stand.

**V.     CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss plaintiff's claims under the Equal Protection Clause, (Doc. 88), is **GRANTED**. As all claims over which the court has original jurisdiction are dismissed, the court will decline to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367(c)(3), and plaintiff's state law claims are thus **DISMISSED** without prejudice to refiling in state court. Plaintiff's complaint, (Doc. 84), is **DISMISSED**. The Clerk is directed to close the case. A separate order shall issue.

                                                                s/ *Malachy E. Mannion*
                                                                **MALACHY E. MANNION**
                                                                **United States District Judge**

**Date: June 10, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-2576-03.wpd